**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
RYAN O'DELL,                              :
                                          :
           Plaintiff,         :  Civil Action No. 23-cv-7784
                                          :
v.                                        :  **COMPLAINT FOR VIOLATIONS OF**
                                          :  **SECTIONS 14(a) AND 20(a) OF THE**
SOVOS BRANDS, INC., TODD R.               :  **SECURITIES EXCHANGE ACT OF**
LACHMAN, WILLIAM R. JOHNSON,              :  **1934**
TAMER ABUAITA, JEFFERSON M. CASE,         :
ROBERT L. GRAVES, NEHA U. MATHUR,         :  **JURY TRIAL DEMANDED**
DAVID W. ROBERTS, VALARIE L.              :
SHEPPARD, and VIJAYANTHIMALA              :
SINGH,                                    :
                                          :
         Defendants.     :
---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Sovos Brands, Inc. ("Sovos Brands or

the "Company") and the members Sovos Brands' board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed acquisition of Sovos Brands by affiliates of Campbell Soup

Company ("Campbell Soup").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 31, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Premium Products Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Campbell Soup, will merge with and into Sovos Brands, with Sovos Brands surviving as a wholly-owned subsidiary of Campbell Soup (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 7, 2023 (the "Merger Agreement"), each Sovos Brands stockholder will receive $23.00 in cash (the "Merger Consideration") for each Sovos Brands share owned.

3.      As discussed below, Defendants have asked Sovos Brands' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Centerview Partners LLC ("Centerview" and together with Goldman Sachs, the "Financial Advisors") in support of their fairness opinions.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Sovos Brands' stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Sovos Brands stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Todd R. Lachman has served as a member of the Board since 2017 and is Founder, President and Chief Executive Officer of the Company.

11.     Individual Defendant William R. Johnson has served as a member of the Board since January 2017 and is the Chair of the Board.

12.     Individual Defendant Tamer Abuaita has served as a member of the Board since July 2022.

13.     Individual Defendant Jefferson M. Case has served as a member of the Board since January 2017.

14.     Individual Defendant Robert L. Graves has served as a member of the Board since April 2022.

15.      Individual Defendant Neha U. Mathur has served as a member of the Board since September 2021.

16.     Individual Defendant David W. Roberts has served as a member of the Board since January 2017.

17.     Individual Defendant Valarie L. Sheppard has served as a member of the Board since September 2021.

18.     Individual Defendant Vijayanthimala Singh has served as a member of the Board since September 2021.

19.     Defendant Sovos Brands is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 168 Centennial Parkway, Suite 200, Louisville, CO 80027. The Company's stock trades on the NASDAQ Global Select Market under the symbol "SOVO."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

22.     Sovos Brands, through its subsidiaries, operates as a consumer-packaged food company that manufactures and distributes consumer food products in the United States. The Company operates in two segments, Dinner and Sauces, and Breakfast and Snacks. It provides pasta sauces, dry pasta, soups, frozen entrees, frozen pizza, yogurts, pancake and waffle mixes,

4

other baking mixes, and frozen waffles under the Rao's, Michael Angelo's, noosa, and Birch

Benders brands. The Company sells its products principally to retail outlets and wholesale

distributors, including traditional supermarkets, mass merchants, warehouse clubs, wholesalers,

specialty food distributors, military commissaries, and non-food outlets, such as drug store chains,

dollar stores, and e-commerce retailers. Sovos Brands was incorporated in 2017 and is

headquartered in Louisville, Colorado.

23.     On August 7, 2023, the Company and Campbell Soup jointly announced the

Proposed Transaction:

> CAMDEN, N.J. & LOUISVILLE, Colo.–(BUSINESS WIRE)– **Campbell Soup Company (NYSE: CPB)** and **Sovos Brands, Inc. (Nasdaq: SOVO)** today announced that the companies have entered into an agreement for Campbell to acquire Sovos Brands, Inc. for $23 per share in cash, representing a total enterprise value of approximately $2.7 billion. This represents a 14.6x adjusted EBITDA multiple including expected annual run rate synergies of approximately $50 million. The strategic transaction adds a high-growth, market-leading premium portfolio of brands to diversify and enhance Campbell's Meals & Beverages division, providing a substantial runway for sustained profitable growth.
>
> Sovos Brands had annual adjusted net sales of $837 million in calendar year 2022 and is a compelling growth story as a North America focused food company with compounded annual organic net sales growth rate of 28% from fiscal 2019 to fiscal 2022 offering a variety of premium products including pasta sauces, dry pasta, soups, frozen entrées, frozen pizza and yogurts under the brand names *Rao's*, *Michael        Angelo's* and *noosa*.        The flagship *Rao's* brand, which represented approximately 69% of Sovos Brands adjusted net sales in fiscal 2022, grew organic net sales by 34.9% compared to the prior year.
>
> "We're thrilled to add the most compelling growth story in the food industry and welcome the talented employees who have built a nearly $1 billion portfolio," said Campbell's President and CEO Mark Clouse. "This acquisition fits perfectly with and accelerates our strategy of focusing on one geography, two divisions and select key categories that we know well. Our focused strategy has enabled us to deliver strong results over the last five years, enhance our

brands and capabilities, and generate strong cash flow to lower debt. With all this progress, I am confident in our readiness to execute and integrate this important acquisition. The Sovos Brands portfolio strengthens and diversifies our Meals & Beverages division and paired with our faster-growing and differentiated Snacks division, makes Campbell one of the most dependable, growth-oriented names in food."

"Today marks a momentous occasion for Sovos Brands as we announce our plans to join the Campbell's family," commented Todd Lachman, Founder, President and Chief Executive Officer of Sovos Brands, Inc. "We have built a one-of-a-kind, high growth food company focused on taste-led products across a portfolio of premium brands, anchored by the *Rao's* brand. Our success would not have been possible without the incredibly talented and passionate team at Sovos Brands, which has been instrumental in building one of the fastest growing food companies of scale in the industry today. This transaction is expected to create substantial value for our shareholders, resulting in a 92% increase from our 2021 IPO price. As one of the most trusted and respected food companies in North America, I'm confident in Campbell's ability to continue bringing our products to more households and further building on our track record of growth and success for years to come."

**Compelling Strategic Rationale**

- **Multi-dimensional Value Creation**
  o Acquisition unlocks significant value through strong and sustainable growth opportunities
  o Expect a fast, effective and efficient integration and synergy unlock given familiarity with categories and Campbell's strong capabilities, processes and proven integration playbook
  o The acquisition is expected to provide considerable earnings growth contribution to the division while unlocking additional value through meaningful cost synergies
  o Campbell's supply chain excellence and scale are expected to drive operating synergies for Sovos Brands, while improving scale efficiency of Campbell's core operations
- **Attractive Sustainable Profitable Growth**
  o Significant whitespace opportunity for *Rao's* and *Michael Angelo's* through increased distribution, growing items per store and household penetration to category peer levels
  o Campbell's expertise in retail execution is expected to enhance shelf productivity, geographic footprint, and sub-category penetration

- o Sovos Brands' expertise in innovation, category expansion and the marketing of high-growth brands is expected to enhance and strengthen Campbell's capabilities as the portfolio continues to transform
- **Accelerates Campbell's Focused, Strategic Plan**
- o Further advances the company's focused one geography, two division roadmap – Meals & Beverages and Snacks
- o Solidifies role of Meals & Beverages as a sustainable and dependable contributor to the enterprise, by complementing a stable, core portfolio in mainstream product categories with a fast-growing differentiated, premium segment
- o Delivers Campbell's $1 billion sauces strategic objective by filling in critical white space in the growing ultra-distinctive Italian sauce category, a segment where Campbell's does not currently compete
- o Extends Campbell's presence into the fast growing, on-trend, premium frozen meals segment with *Rao's* and *Michael Angelo's*, while adding meaningful scale to the existing Pepperidge Farm's frozen portfolio

**Financial Highlights**

The all-cash offer for Sovos Brands of $23 per share for a total enterprise value of approximately $2.7 billion represents an adjusted EBITDA multiple of 14.6x including run rate synergies and 19.8x excluding synergies[6]. The acquisition is expected to support Campbell's long-term financial growth algorithm with expected annualized cost synergies reaching approximately $50 million over the next two years, applying the learnings from the successful integrations of Snyder's-Lance and Pacific Foods. The transaction is expected to be accretive to adjusted diluted earnings per share by the second year, excluding one-time integration expenses and costs to achieve synergies.

Following the completion of the transaction, Sovos Brands' results will be managed within Campbell's Meals & Beverage division.

**Transaction Structure and Timing**

Campbell plans to finance the acquisition price through the issuance of new debt. Projected leverage is expected to be approximately 4x at closing. Given Campbell's expectation of continued strong cash flow from operations, the company remains committed to maintaining its capital allocation priorities that include continued investment in key growth and productivity initiatives in the business, maintaining a competitive dividend, a focus on reaching

our target leverage ratio of approximately 3x by the end of the third year, and continuing anti-dilutive share repurchases.

The closing of the transaction is subject to Sovos Brands stockholder approval and customary closing conditions, including regulatory approvals. Closing is expected by the end of December 2023. The transaction has been approved by both Boards of Directors. In addition, each member of the Board of Directors of Sovos Brands that is a stockholder of Sovos Brands and certain funds affiliated with Advent International that are stockholders of Sovos Brands have entered into voting agreements with Campbell, pursuant to which each has agreed, among other things, to support the transaction.

Evercore acted as Campbell's lead financial advisor in this transaction. Davis Polk & Wardwell LLP acted as Campbell's legal counsel. Goldman Sachs & Co. LLC and Centerview Partners LLC acted as financial advisors to Sovos Brands, and Hogan Lovells US LLP and Richards, Layton & Finger, P.A. acted as legal counsel. Weil, Gotshal & Manges LLP acted as Advent International's legal counsel.

* * *

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Sovos Brands' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Proxy Statement**

25.     On August 31, 2023, Sovos Brands filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Sovos Brands management and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Sovos Brands management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Adjusted Net Income, Adjusted Earnings Per Share, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analyses*

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     With respect to *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for the Company; (ii) the inputs and assumptions underlying the inputs and assumptions underlying the range of perpetual growth rates ranging from 2.00% to 2.50%; (iii) the inputs and assumptions underlying the discount rates ranging from 7.25% to 8.25%; (iv) the weighted cost of capital of the Company; (v) Sovos Brands' net debt as of July 1, 2023; and (vi) the number of fully diluted outstanding shares of Sovos Brands' common stock as of July 29, 2023.

32.     With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics of each transaction selected by Goldman Sachs for the analysis; (ii) the basis for applying a reference range of EV/LTM EBITDA multiples of 13.7x to 25.0x to the Company's LTM EBITDA as of July 1, 2023.

33.     With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed; and (ii) the premia of each of the transactions.

34.     With respect to Goldman Sachs' *Selected Public Company Comparables Analysis*, the Proxy Statement fails to disclose the financial metrics of each company selected by Goldman Sachs for the analysis.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analyses*

35.     With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics of each company selected by Centerview for the analysis; (ii) the basis for selecting a reference range of EV/2023E EBITDA multiples of 16.0x to 19.0x.

36.     With respect to Centerview's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics of each transaction selected by Centerview for the

analysis; (ii) the basis for selecting a reference range of EV/LTM EBITDA multiples of 16.0x to 21.0x.

37.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of implied terminal enterprise values for the Company; (ii) the inputs and assumptions underlying the inputs and assumptions underlying the range of perpetual growth rates ranging from 4.00% to 4.50%; (iii) the inputs and assumptions underlying the discount rates ranging from 9.00% to 9.75%; (iv) the weighted cost of capital of the Company; (v) Sovos Brands' net debt as of July 1, 2023; and (vi) the number of fully diluted outstanding shares of Sovos Brands' common stock as of July 29, 2023.

38.     With respect to Centerview's *Selected Analyst Price Targets Analysis*, the Proxy Statement fails to disclose: (i) the Wall Street research analysts observed; and (ii) the price targets published by the Wall Street research analysts.

39.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Sovos Brands within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Sovos Brands, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Sovos Brands, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

14

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Sovos Brands, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 1, 2023                **MELWANI & CHAN LLP**


By:   */s/ Gloria Kui Melwani*
     Gloria Kui Melwani (GM5661)
     1180 Avenue of the Americas, 8th Fl.
     New York, NY 10036
     Telephone: (212) 382-4620
     Email: gloria@melwanichan.com

     *Attorneys for Plaintiff*

17